WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arron Eugene Mowry,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>Sergeant Knight, et al.,<br><br>　　　　　　　Defendants. | No.  CV 13-2053-PHX-SMM (MEA)<br><br>**O R D E R** |

Plaintiff Arron Eugene Mowry brought this pro se civil rights action under 42 U.S.C. § 1983 against Arizona Department of Corrections ("ADOC") Officers Evans and Knight and an unidentified nurse.  (Doc. 1.)  Before the Court is Defendants Evans and Knight's Motion for Summary Judgment on the ground that Plaintiff failed to exhaust administrative remedies.  (Doc. 45.)  Plaintiff opposes the motion.  (Doc. 51.)

The Court will grant the Motion and terminate the action.

**I.    Background**

Plaintiff's claim arose during his confinement at the Arizona State Prison Complex-Florence ("ASPC-Florence"), Central Unit.  (Doc. 1.)  Plaintiff asserted seven separate counts against Sergeant Knight, Lieutenant Evans and an unidentified male nurse for an incident on October 4, 2012.  Plaintiff alleged that Knight used excessive force against him by kicking Plaintiff's feet out from under him while Plaintiff was handcuffed with his hands behind his back and then getting on top of Plaintiff, grabbing Plaintiff's previously injured wrist and bending and twisting it.  Plaintiff further alleged

that Evans was present and witnessed Knight attacking Plaintiff but did not intervene to stop the attack. Plaintiff was transported on a gurney to medical with his hands cuffed behind his back. Plaintiff alleged that the unidentified nurse jerked Plaintiff's arm around "to show off to the other officers that he is not going to treat [Plaintiff] with any respect either." (*Id*.) Plaintiff also alleged that Knight and Evans lied and falsified documentation and manipulated disciplinary proceedings related to the incident. Plaintiff alleged that, as a result of the attack, he sustained injuries to his mid-back, lower back, right elbow, right shoulder, nerve damage to his legs and feet, has a scar on the right side of his back, exacerbated injuries to his right wrist, and psychological, mental, and emotional trauma.

Plaintiff sued for compensatory and punitive damages, costs, and injunctive relief.

On screening pursuant to 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated Eighth Amendment claims in Counts One and Two against Knight and Evans and directed them to answer those claims. (Doc. 7.) The Court also determined that Plaintiff stated an Eighth Amendment claim for deliberate indifference to a serious medical need against the unidentified nurse, but did not order service on the anonymous Defendant. The Court advised Plaintiff that if he discovered the identity of the male nurse, he should promptly file a motion to amend his Complaint to name the anonymous Defendant and submit a proposed amended complaint. The Court dismissed the remaining claims. (*Id.*)

On May 16, 2014, Defendants Knight and Evans filed their Motion for Summary Judgment on Exhaustion, arguing that Plaintiff failed to exhaust administrative remedies as required under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). (Doc. 45.)[1]

---

[1] The Court issued an Order pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), which informed Plaintiff of the summary judgment requirements under Federal Rule of Civil Procedure 56. (Doc. 48.)

Plaintiff filed his "Answer" to Defendants' Motion (hereinafter, "Response") on June 19, 2014 (Doc. 51), and Defendants[2] filed their Reply on July 21, 2014 (Doc. 59).

## II.     Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything.  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000).  But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249.  In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor.  *Id.* at 255.  The court need consider only

---

[2] The Court's reference to "Defendants" in this Order refers only to Evans and Knight.

the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

### III. Exhaustion

#### A. Governing Standard

Under the PLRA, a prisoner must exhaust "available" administrative remedies before filing an action in federal court. *See* 42 U.S.C. § 1997e(a); *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006); *Brown v. Valoff*, 422 F.3d 926, 934-35 (9th Cir. 2005). The prisoner must complete the administrative review process in accordance with the applicable rules. *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006). Exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The defendant bears the initial burden to show that there was an available administrative remedy and that the prisoner did not exhaust it. *Albino v. Baca*, 747 F.3d 1162, 1169, 1172 (9th Cir. 2014); *see Brown*, 422 F.3d at 936-37 (a defendant must demonstrate that applicable relief remained available in the grievance process). Once that showing is made, the burden shifts to the prisoner, who must either demonstrate that he, in fact, exhausted administrative remedies or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. The ultimate burden, however, rests with the defendant. *Id.* Summary judgment is appropriate if the undisputed evidence, viewed in the light most favorable to the prisoner, shows a failure to exhaust. *Id.* at 1166, 1168; *see* Fed. R. Civ. P. 56(a).

If summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge; a plaintiff is not entitled to a jury trial on the issue of exhaustion. *Albino*, 747 F.3d at 1170-71. But if a court finds that the prisoner exhausted administrative remedies, that administrative remedies were not available, or that the

failure to exhaust administrative remedies should be excused, the case proceeds to the merits. *Id.* at 1171.

### B. Applicable Grievance Procedure

The undisputed and disputed relevant facts are derived from Defendants' Statement of Facts ("DSOF") and supporting exhibits (Doc. 46), Plaintiff's Response and attached exhibits (Doc. 51), and Plaintiff's Statement of Facts ("PSOF") (Doc. 52).[3]

Both parties cite to Department Order ("DO") 802, and do not appear to dispute that DO 802 is the established ADOC grievance process. (Doc. 46, DSOF ¶¶ 4-6; Doc. 51, Exs. 2-7.)[4] There are four levels of review in the DO 802 grievance process. First, an

---

[3] Plaintiff attached his exhibits to his Response to Defendants' Motion for Summary Judgment rather than to PSOF. Defendants object to PSOF on the grounds that it is not in the proper form as a controverting statement of facts and because Plaintiff "has failed to challenge the Defendants' facts in any way[.]" (Doc. 59 at 8.) Defendants' objections are overruled. Because Plaintiff is proceeding pro se, the Court is required to construe his motion papers liberally and must "avoid applying summary judgment rules strictly." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010); *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). Further, the Court will consider only specific objections to identified paragraphs within PSOF and to specifically identified evidence and exhibits. *See Reinlasoder v. City of Colstrip*, CV-12-107-BLG, 2013 WL 6048913, at *7 (D. Mont. Nov. 14, 2013) (unpublished) ("objections [ ] must be stated with enough particularity to permit the Court to rule"); *see also Halebian v. Berv*, 869 F. Supp. 2d 420, 443 n. 24 (S.D.N.Y. 2012) ("unsupported objection in entirely conclusory fashion to the entire record is insufficient and thus denied").

[4] Both parties inexplicably provide copies of or cite to different versions of DO 802, without stating which version(s) pertain to Plaintiff's claims. Defendants provide the version of DO 802 that became effective July 13, 2009, was modified by the Director's Instruction on May 28, 2010, and was effective through December 18, 2012. (Doc. 46, DSOF ¶ 4 (citing to Doc. 12-1 at 2-3, ¶ 3 and Attachs. A-B)). Defendants also provide the version of DO 802 effective from December 19, 2012 through December 12, 2013, and the version that has been in effect since December 12, 2013. (Doc. 46, DSOF ¶¶ 5-6 (citing to Doc. 12-1 at 3, ¶¶ 4-5 and Attachs. C-D).) In his Response to Defendants' Motion, Plaintiff provides a version of DO 802 with an effective date of July 13, 2009 and cites to provisions of DO 802 in effect as of December 12, 2013. (Doc. 51, Exs. 2- 7.) Because Plaintiff does not appear to object to the three different versions provided by Defendants, has himself cited to two different versions of DO 802, and because there appear to be no material differences in the relevant steps of the grievance

- 5 -

inmate is directed to attempt to resolve a complaint informally by, for example, having a discussion with staff "in the area most responsible for the complaint or the submission of Inmate Letters." (Doc. 46, DSOF ¶ 8; Doc. 12-1 at 22 (DO 802.01 §1.1).) If that approach is unsuccessful, within 10 workdays of the complained-of action, an inmate may submit an Informal Complaint on an Inmate Letter to the Correctional Officer (CO) III assigned to his unit. (Doc. 46, DSOF ¶ 9; Doc. 12-1 at 22 (DO 802.02 § 1.2).) The CO III has 15 workdays to respond to the Informal Complaint. (Doc. 46, DSOF ¶ 10; Doc. 12-1 at 22 (DO 802.02 § 1.3).) If the inmate is dissatisfied with the CO III's response, he may file a Formal Grievance within 5 workdays to the grievance coordinator. (Doc. 46, DSOF ¶ 11; Doc. 12-1 at 22 (DO 802.02 § 1.4).) The Deputy Warden must issue a written response to the Formal Grievance within 15 workdays. (Doc. 46, DSOF ¶ 12; Doc. 12-1 at 23 (DO 802.03 §1.5).) The inmate may appeal the Deputy Warden's Formal Grievance response to the Warden within 5 workdays of receiving the response. (Doc. 46, DSOF ¶ 13; Doc. 12-1 at 24 (DO 802.05 § 1.1).) The Warden has 20 workdays to issue a written response that either affirms or reverses the Deputy Warden's decision. (Doc. 46, DSOF ¶ 14; Doc. 12-1 at 24 (DO 802.05 § 1.3).)

If dissatisfied with the Warden's response, the inmate may appeal to the ADOC Director within 5 workdays. (Doc. 46, DSOF ¶ 15; Doc. 12-1 at 25 (DO 802.07 § 1.1).) Inmates may not appeal to the Director "until the Grievance Procedure within their assigned unit and institution has been exhausted." (Doc. 12-1 at 25 (DO 802.07 § 1.1).) The Central Office Appeals Officer may return an appeal to the unit for further investigation or if the appeal does not meet the requirements of DO 802. (Doc. 12-1 at 25 (DO 802.07 § 1.3).) Within 30 days of receiving the appeal, the Central Office

---

process, the Court will refer to the version in effect when Plaintiff initiated his grievance. That is the version that became effective July 13, 2009 and was modified by the Director's Instruction on May 28, 2010. (*See* Doc. 46, DSOF ¶ 4 (citing to Doc. 12-1, Ex. 1, Attachs. A-B).)

Appeals Officer is to prepare a response and submit it to the Director for signature.[5] (Doc. 46, DSOF ¶ 16; Doc. 12-1 at 25 (DO 802.07 § 1.4).)  If an inmate does not receive a response within the specified time period under DO 802, he may proceed to the next stage of the grievance process.  (Doc. 46, DSOF ¶ 17; Doc. 12-1 at 9.)

### C. Plaintiff's Attempt to Grieve

The documentary evidence shows that on October 11, 2012, Plaintiff submitted a timely four-page Inmate Letter, or informal complaint, (i.e., within ten days of the October 4, 2012 incident), which was addressed to CO III Bar.  (Doc. 51, Ex. 1 at 1-2.)  The informal complaint complained about the alleged use of excessive force by Defendant Knight on October 4, 2012, Defendant Evans' witnessing the incident but not intervening, and the lack of medical care for Plaintiff's injuries.  (*Id.*)  Plaintiff only retained copies of the first two pages of his informal complaint because those were the only pages that had carbon copies.  (Doc. 52, PSOF ¶ 3.)  Under DO 802, CO III Bar had until November 1, 2012 to respond to Plaintiff's informal complaint.  (Doc. 46, DSOF ¶ 23; *see also* Doc. 52, PSOF ¶ 4.)

On October 29, 2012, before receiving a response to his informal complaint, Plaintiff was transferred from ASPC-Florence, Central Unit, to ASPC-Yuma, Dakota Unit.[6]  (Doc. 52, PSOF ¶ 6.)  Although CO III Bar's response to Plaintiff's informal

---

[5] It is not clear if DO 802.07 §§ 1.3 and 1.4 are alternative methods of processing a grievance appeal to the Director, of if the Central Office Appeals Officer prepares a response and submits it to the Director in all cases.

[6] Plaintiff states that at the time of his transfer to ASPC-Yuma he was appealing the denial of his request for protective custody; therefore, he asserts that he was transferred prematurely.  (Doc. 52, PSOF ¶ 7.)  Once Plaintiff arrived at ASPC-Yuma, he requested protective custody again and so was transferred to the detention unit to begin the DO 805 protective custody process again.  (Doc. 52, PSOF ¶ 8.)  Defendants object to PSOF ¶ 7 as immaterial, unsupported, and argumentative and they object to PSOF ¶ 8 as immaterial and supported.  (Doc. 59 at 12.)  Defendants' objections are overruled in part and sustained in part.  Whether Plaintiff was appealing the denial of his request for protective custody is within his personal knowledge; therefore, that portion of Defendants' objection to PSOF ¶ 7 is overruled.  However, Plaintiff cites to no evidence in support of his assertion that his transfer was premature.  Moreover, Plaintiff provides

1  complaint was due by November 1, Plaintiff was aware that if he did not receive a
2  response by the deadline, he was "to proceed to the next level in the grievance process
3  within the time frame" which was "5 days from the day that the time frame would have
4  closed if the CO III has not responded." (Doc. 51, ¶ 5; *see also* Doc. 52, PSOF ¶ 5.)
5  Because Plaintiff was transferred, his property had to be inventoried. (Doc. 52, PSOF
6  ¶ 9.)[7] By the time Plaintiff got his property, "the time frame for [him] to go to the next
7  step in the grievance process had passed" and he did not know what to do. (*Id.*, PSOF
8  ¶ 10.)[8] Plaintiff, therefore, waited to see if he would get a response through the re-route
9  mail. (*Id.*, PSOF ¶ 13.)[9]

---

no evidence to support that the protective custody process had any bearing on the grievance process. Therefore, those objections to PSOF ¶ 7 are sustained. As to PSOF ¶ 8, whether Plaintiff requested protective custody once he arrived at ASPC-Yuma and was transferred to the detention unit there is within Plaintiff's personal knowledge; however, because Plaintiff provides no evidence that his request for protective custody is relevant to his claims here, Defendants' objection to PSOF ¶ 8 is sustained. (Doc. 59 at 12.)

[7] Plaintiff also alleges that it sometimes it takes several weeks to get his property following a transfer. Defendants object to PSOF ¶ 9 as immaterial and unsupported, but admit that an inmate's property is inventoried when he is moved. (Doc. 59 at 12.) Defendants' objection is sustained to the extent Defendants are objecting to the statement that it can take several weeks for Plaintiff to get his property because Plaintiff does not support this statement with evidence, such as when in the past he received his property following a transfer.

[8] Defendants object to PSOF ¶ 10 as unsupported and immaterial. Defendants' objection is overruled because, although Plaintiff does not provide the date he actually received his property, it is within his personal knowledge that he received his property after the deadline. Defendants' objection is also overruled insofar as it is within Plaintiff's personal knowledge that he did not know what to do.

[9] Plaintiff also alleges that it could take a couple of weeks or longer to receive re-route mail. Defendants object to PSOF ¶ 13 as immaterial and unsupported. (Doc. 59 at 13.) Defendants' objection is overruled insofar as it is within Plaintiff's personal knowledge as to why he waited; Defendants' objection is sustained as to how long re-route mail can take to reach an inmate because Plaintiff presents no evidence in support of this statement.

Plaintiff further alleges that he did not want to submit a grievance without CO III

- 8 -

Plaintiff was moved to another unit on December 17, 2012. (Doc. 52, PSOF ¶ 14.)[10] Because he had not received a response to his informal complaint, Plaintiff submitted his grievance to the grievance coordinator in his new unit, CO III Wilcox, that same day. (*Id.*, PSOF ¶ 14; Doc. 51, Ex. 1 at 4-5.) Plaintiff explained in his grievance that he submitted a four-page informal complaint and never received a response; therefore, he asked the grievance coordinator to accept his grievance "in good faith as [he had] been patiently waiting for a response to [his] informal." (Doc. 51, Ex. 1 at 4-5.)

Plaintiff did not receive a response to his grievance within the timeframe and so, on January 15, 2013, he submitted a grievance appeal to the Complex Warden, explaining that he did not receive responses to either his informal complaint or his grievance. (Doc. 52, PSOF ¶ 15; Doc. 51 ¶¶ 15-16.) On or about January 16, 2013, Plaintiff received a response to his grievance from CO III Wilcox. (Doc. 52, PSOF ¶ 16.) The response, with the subject line, "UNPROCESSED GRIEVANCE," states that Plaintiff's grievance was being returned unprocessed; the following two statements were noted as the reasons for Plaintiff's grievance being returned: (1) "You are past the time frames (05 calendar days) for filing an appeal. **Your appeal should be addressed to the unit which it originated, however you are past timeframes for filing an appeal**."; and (2) "Failed to attempt to resolve a complaint informally prior to filing a formal grievance. **You have**

---

Bar's response to his informal complaint "on the grounds that the grievance coordinator would unprocess [his] grievance because [Plaintiff] didn't have proof that [he] attempted to informally resolve the problem. It has happened to [him] many times before." (Doc. 52, PSOF ¶ 12.) Defendants object to PSOF ¶ 12 as immaterial and unsupported because the two exhibits Plaintiff submitted in support of this statement are from future dates in 2013 and so do not establish that Plaintiff had grievances returned to him many times in the past. (Doc. 59 at 13.) Defendants also argue that Plaintiff contradicts himself in PSOF ¶ 12 because he said in PSOF ¶ 3 that he had "at least a partial copy of his informal complaint," apparently asserting that Plaintiff could have submitted those pages of his informal complaint as proof of his attempt to informally resolve the problem. (*Id.*) The Court agrees and Defendants' objection is sustained.

[10] Defendants admit PSOF ¶ 14, except to note that inmate records indicate that Plaintiff was transferred on December 14, 2012, but state that the three-day difference and the fact that Plaintiff was transferred are immaterial.

1 **not provided a copy of your attempt to informally resolve the issue.**" (Doc. 51, Ex. 1
2 at 7 (emphasis in original).)

3 On January 23, 2013, Plaintiff submitted an appeal to ADOC Director Charles
4 Ryan "explaining everything." (Doc. 52, PSOF ¶ 22; Doc. 51, Ex. 1 at 8-10.) On March
5 11, 2013, Plaintiff received a response, dated January 29, 2013, to the grievance packet
6 that he had sent to Director Ryan. (Doc. 52, PSOF ¶ 24; Doc. 51, Ex. 1 at 11.)[11] The
7 response was from CO III Wilcox who returned Plaintiff's grievance unprocessed, noting
8 that Plaintiff had filed his informal resolution on October 11, 2012, was transferred to
9 Dakota Unit on October 29, 2012, and did not submit a grievance until December 17,
10 2012. (Doc 51, Ex. 1 at 11.) Wilcox wrote that "[s]ince your grievance originated at
11 Central Unit that is where it was supposed to be sent and to whom it should have been
12 addressed" and that any additional appeals would need to be addressed to Central Unit.
13 (*Id*.) In addition, Wilcox wrote that "[s]ince you are out of timeframes you may need to
14 write to Central [U]nit grievance coordinator and request to waive the timeframes." (*Id*.)

15 On March 15, 2013, Plaintiff submitted an inmate letter to the ASPC-Florence,
16 Central Unit grievance coordinator, asking to waive the time frames and "explaining
17 everything" and attaching "everything" to the form, including a copy of his grievance
18 packet. (Doc. 52, PSOF ¶ 25; Doc. 51, Ex. 1 at 12-13.)[12] At this time, Plaintiff was
19 housed at ASPC-Lewis, and he submitted an inmate letter to CO III Frazier asking her to
20 make a copy of his grievance packet and to forward all of the originals to the grievance
21 coordinator at the Central Unit. (Doc. 52, PSOF ¶ 27; Doc. 51, Ex. 1 at 14.) Frazier did
22 what Plaintiff requested. (Doc. 52, PSOF ¶ 27.)

---

25 [11] Defendants object to PSOF ¶ 24 and the claim that the response was received on
26 March 11, 2013 as "immaterial and unsupported." When Plaintiff received the response is within his personal knowledge. Therefore, Defendants' objection as to the date
27 Plaintiff received the response is overruled.

28 [12] Defendants object to PSOF ¶ 25 as immaterial and unsupported, but assume for the purposes of its Motion that PSOF ¶ 25 is true. Defendants' objection is overruled.

- 10 -

Plaintiff was eventually transferred back to ASPC-Florence, Central Unit, where he "continued to exhaust," and on July 5, 2013, Plaintiff submitted an inmate letter to CO IV Anderson, the grievance coordinator, asking about the grievance packet and inmate letter that he had sent to her from ASPC-Lewis. (*Id.*, PSOF ¶ 29; Doc. 51, Ex. 1 at 15.) Around July 8, 2013, Plaintiff received a response from Anderson stating that she never received the grievance packet and the only thing she received was the January 29, 2013 response from CO III Wilcox. (Doc. 52, PSOF ¶ 31; Doc. 51, Ex. 1 at 17-18.)

On July 10, 2013, Plaintiff submitted another inmate letter to CO IV Anderson "addressing the entire issue" and attaching another copy of the grievance packet. (Doc. 52, PSOF ¶ 34; Doc. 51, Ex. 1 at 19-20.) Anderson responded on July 29, 2013, stating that she and Deputy Warden Fizer "saw no justifiable reason to waive time frames." (Doc. 52, PSOF ¶ 35.) Before Plaintiff received the response from Anderson, he submitted another appeal and grievance packet to Director Ryan "exhausting the administrative remedies 'once again.'" (*Id.*, PSOF ¶ 36; Doc. 51, Ex. 1 at 21.) On July 15, 2013, Plaintiff received a response to his appeal from CO IV Anderson, stating that she was returning Plaintiff's appeal unprocessed and informing Plaintiff that he cannot appeal an unprocessed grievance. (Doc. 52, PSOF ¶ 37; Doc. 51, Ex. 1 at 22.)

### D. Discussion

The Court finds that Defendants have established the availability of an administrative remedy procedure and that Plaintiff was aware of the procedure.

There is no dispute that Plaintiff filed a timely informal complaint on an Inmate Letter on October 11, 2012 regarding the October 4, 2012 incident and that he did not receive a response by the November 1 deadline.[13] Further, there is no dispute that, without a response, Plaintiff needed to file a grievance within five work days of the

---

[13] Defendants merely aver in response to PSOF ¶¶ 3 and 6 that they will assume Plaintiff submitted a four-page informal complaint to CO III Bar on October 11, 2012 and that the response time would have expired on November 1, 2012. (Doc. 59 at 12.)

- 11 -

1    November 1 deadline, which was November 8, 2012.  There is no dispute that Plaintiff
2    did not file a grievance until December 17, 2012.

3          Plaintiff asserts that, thereafter, he appealed his grievance, and he argues that
4    because he submitted appeals to the Director twice, he has exhausted his administrative
5    remedies and "there should be records of this" at the Central Office.  (Doc. 51 at 10; *see*
6    *also* Doc. 53 ("Declaration of Arron Mowry") at 1-2.)  Defendants assert that Plaintiff's
7    grievance and subsequent appeals were not processed because they were outside the
8    timeframes and, therefore, the Central Office did not have a record of his grievance in its
9    files.  (Doc. 59 at 4-5, 7.)

10         As stated, Plaintiff was required to comply with the procedural rules governing the
11   grievance process; this includes deadlines.  *See Woodford*, 548 U.S. at 81.  The issue
12   presented here is whether Plaintiff's failure to file his grievance by the November 8, 2012
13   deadline is excused by the fact that he was transferred to a different prison on October 29,
14   2012 before receiving a response to his informal complaint.  There are certain instances
15   in which a prisoner's failure to exhaust may be excused if he demonstrates that the
16   grievance process is unavailable to him.  Such instances include, for example, the
17   inability to obtain the required forms, misinformation from prison officials about when a
18   prisoner could file a grievance, and threats of retaliation for filing a grievance.  *Nunez v.*
19   *Duncan,* 591 F.3d 1217, 1224 (9th Cir. 2010).

20         Plaintiff asserts that once he received his property after his arrival at ASPC-Yuma,
21   Dakota Unit, he knew that he was out of the timeframe to submit his grievance, but he
22   did not know what to do.  (Doc. 51 at 3.)  He contends there was no grievance process he
23   could follow at that point and that DO 802 does not state what he should do if he is
24   transferred while attempting to exhaust his grievance.  (Doc. 52, PSOF ¶ 11.)  Instead,
25   Plaintiff waited until December 17, 2012 to submit his grievance, after he was transferred
26   to a different unit.  Defendants object to PSOF ¶ 11 as "untrue and unsupported,"
27   asserting that "[t]here is no special grievance process when an inmate is transferred" and
28   that DO 802 "applies to all grievances and the process is the same regardless of whether

an inmate has been transferred." (Doc. 59 at 13, citing Doc. 12-1 at 8, DO 802.01 § 1.6 ("Inmates may utilize the Inmate Grievance Procedure regardless of any disciplinary status, housing location or classification.")).) Defendants' objection is sustained. Nothing in DO 802 suggests that the grievance process ends or a different grievance procedure sets in upon an inmate's transfer to another unit or facility.

Defendants argue that there is no evidence that Plaintiff "ever attempted to proceed with his grievance or obtain assistance or instruction from his CO III or the grievance coordinator while he was at Dakota Unit. In fact, he explicitly states that he did not attempt to proceed with his grievance while at Dakota Unit, even though he was there for approximately a month and a half." (Doc. 45 at 9.) Defendants further argue that Plaintiff fails to explain "why he ignored the first response from CO III Wilcox that advised he needed to address his grievance to [ASPC-Florence] Central Unit and instead tried to appeal his unprocessed grievance to the Director." (*Id*. at 11.)

Plaintiff appears to argue that his transfer from ASPC-Florence to ASPC-Yuma rendered the grievance procedure unavailable. Generally, exhaustion requires proper completion of each step in the agency's grievance procedure, *see Woodford*, 548 U.S. at 92; however, completing every step is not required "when circumstances render administrative remedies 'effectively unavailable.'" *Sapp v. Kimbrell*, 623 F.3d 813, 822 (9th Cir. 2010) (citing *Nunez*, 591 F.3d at 1226). However, the mere transfer to a different ADOC prison or unit does not render a grievance procedure unavailable. *See Cohea v. Jones*, 2008 WL 114956, at \*5 (E.D. Cal. Jan. 11, 2008) (finding that the transfer to another prison within the same prison system did not excuse plaintiff's failure to properly exhaust his administrative remedies); *Howse v. Walker*, 2007 WL 201161, at \*4 (E.D. Cal. Jan. 24, 2007) (finding that plaintiff's transfer to another facility operated by the same sheriff's department did not make the grievance process unavailable to plaintiff).

The Court is persuaded that the grievance process found in DO 802 was still applicable and available to Plaintiff after his transfer to ASPC-Yuma, Dakota Unit.

1     Although Plaintiff claims he did not know what to do upon his transfer to a different
2     prison operated by ADOC, he also claims to be familiar with the grievance process and
3     knew that he could proceed to the next level of the grievance process once the timeframe
4     had expired at the prior level.  Plaintiff has not presented any evidence or argument that
5     he was unable to grieve his claims after his transfer to ASPC-Yuma on October 29, 2012.
6     Moreover, Plaintiff claims that he decided to wait to see if a response to his informal
7     complaint would arrive in the re-route mail, which he says could take a couple of weeks,
8     but he does not explain why, if he received no response by mid-November even, he did
9     not go ahead and submit a grievance asking that the timeframe be waived due to his
10    transfer and waiting for the re-route mail.  Instead, Plaintiff waited another month—until
11    mid-December—before attempting to file a grievance.  Even then, he did not comply
12    with the requirement to attach a copy of his attempt at informal resolution.  Although
13    Plaintiff explains that he only had the first two of four pages of his informal complaint
14    and he did not want to lose those two pages, he does not say that he ever requested
15    anyone make copies of those two pages so that he could at least attach those two pages to
16    his grievance.

17           Defendants argue that Plaintiff "clearly knew that he could proceed with his
18    grievance because he did so once transferred in December 2012" and that "if he truly did
19    not know what to do or how to proceed, he could have requested assistance or guidance
20    from his CO III or the grievance coordinator after his first transfer in October 2012."
21    (Doc. 45 at 11.)  Defendants further argue that Plaintiff's "own actions show that he was
22    well aware that he could request assistance with the grievance process."  (Doc. 59 at 6
23    (citing to Doc. 51 at 11, ¶¶ 23, 25, in which Plaintiff states that on March 15, 2013, he
24    submitted an inmate letter asking CO III Frazier to make a complete copy of his
25    grievance packet and to forward it to the Central Unit and that on July 5, 2013, he asked
26    CO IV Anderson about the grievance packet and inmate letter).)  The Court agrees that
27    Plaintiff offered no evidence or plausible explanation of why he waited over a month past

the deadline to submit his grievance, or why, even then, he only submitted an incomplete grievance.

Accordingly, Defendants' Motion for Summary Judgment will be granted.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendants' Motion for Summary Judgment (Doc. 45).

(2) Defendants' Motion for Summary Judgment (Doc. 45) is **granted**; Plaintiff's Complaint is dismissed without prejudice for failure to exhaust administrative remedies.

(3) The Clerk of Court must enter judgment accordingly and terminate the action.

DATED this 8th day of December, 2014.

Stephen M. McNamee
Senior United States District Judge